SUZHOU GOOD-ARK ELECTRONICS CO., LTD.,
derivatively on behalf of
GOOD-ARK SEMICONDUCTOR USA CORP.,

               Plaintiff,

v.

DANIELLE JUNKINS, JOHN MARULLO, BRETT
SINGER, and Defendant GSC USA INC.,

               Defendants,

and

GOOD-ARK SEMICONDUCTOR USA CORP.,
Nominal Defendant.

Civil Action No. 2:25-cv-02931

Honorable Magistrate Judge
Steven Tiscione

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF TEMPORARY RECEIVER

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................... 1

II. FACTS .................................................................................................................... 2

   A. Suzhou and Its Good-Ark Brand ................................................................. 2

   B. The Incorporation of Good-Ark USA as A Distributor of Suzhou's Products in the U.S. .................................................................................................................... 3

   C. The Individual Defendants' Secret Incorporation of GSC and Fraudulent Registration of the "Good-Ark Semiconductor" Mark .................................................. 4

   D. GSC's Infringement of Suzhou's "Good-Ark Semiconductor" Mark and Diversion of Corporate Assets from Good-Ark USA ................................................. 5

   E. The Individual Defendants' Obstruction of Proper Corporate Governance ................. 6

III. ARGUMENT ........................................................................................................ 8

   A. Suzhou Satisfies the Requirements for Preliminary Relief ................................. 8

      1. Suzhou, derivatively, will succeed on the merits on the breach of fiduciary duties claim 8

      2. Suzhou will succeed on the merits on the unfair competition, deceptive business practice, false advertising, and common law trademark infringement claims........................ 9

      3. Suzhou will suffer irreparable harm absent preliminary relief ..................................... 11

      4. Balancing of hardships and the Public Interest favors preliminary relief.................... 12

   B. A Temporary Receiver Is Necessary to Protect Good-Ark USA's Interests ............. 13

   C. Justification for Ex Parte Relief Under Rule 65(b)(1)........................................ 15

      1. Urgency and risk of irreparable harm ....................................................... 15

      2. Likelihood of continued misconduct ........................................................ 16

      3. Necessity of immediate court intervention ................................................. 16

## TABLE OF AUTHORITY

**Cases**

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015)........................ 8

*Echo Design Grp. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003) .................. 8

*Gen. Petroleum GmbH v. Stanley Oil & Lubricants, Inc.*, 2024 U.S. Dist. LEXIS 163731 *53
  (E.D. N.Y. 2024)............................................................................................................ 11

*JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990) ..................................... 11

**Statutes**

New York Business Corporation Law § 1202(a)(3) ..................................................................... 14

**Rules**

Federal Rule of Civil Procedure 65(b)(1) .................................................................................... 15

Plaintiff Suzhou Good-Ark Electronics Co., Ltd. ("Suzhou" or "Plaintiff") respectfully submits this memorandum of law in support of its ex parte Application for a Temporary Restraining Order ("TRO") and Order to Show Cause for Preliminary Injunction and Appointment of Temporary Receiver over Good-Ark Semiconductor USA Corp. ("Good-Ark USA" or the "Company").

## I.    <u>INTRODUCTION</u>

Defendants Danielle Junkins, John Marullo, and Brett Singer (the "Individual Defendants") have engaged in a sustained pattern of fiduciary misconduct, severely mismanaging Good-Ark USA and obstructing its governance.  Since its incorporation, Good-Ark USA has not held a single board meeting due to the Individual Defendants' deliberate refusal to convene such meetings, despite the formal request from the majority of the directors of the board.  This obstruction has effectively paralyzed the board, preventing it from exercising its oversight functions and addressing urgent corporate governance matters.

Furthermore, the Individual Defendants have engaged in self-dealing by forming Defendant GSC USA Inc. ("GSC"), a competing entity, without board knowledge or approval. They fraudulently registered the "Good-Ark Semiconductor" trademark under GSC, despite knowing that GSC was not the rightful owner of the mark.  This unauthorized registration and use of the mark have diverted business opportunities and corporate assets away from Good-Ark USA, enriching the Individual Defendants at the expense of the Company and its majority shareholder, Suzhou.

The Individual Defendants' actions have also resulted in the infringement of the "Good-Ark Semiconductor" trademark.  The unauthorized use of the "Good-Ark Semiconductor" mark by GSC, with the knowledge and participation of the Individual Defendants, constitutes a false

designation of origin and misleading description of fact, likely to cause confusion among consumers regarding the source and sponsorship of GSC's goods. This conduct has not only diluted the goodwill associated with Suzhou's brand but has also obstructed Suzhou's pending U.S. trademark applications, causing irreparable harm to its brand and reputation.

## II.   FACTS

### A.  Suzhou and Its Good-Ark Brand

Established in 1990, Suzhou is a leading Chinese semiconductor manufacturer specializing in discrete devices and IC packaging. Declaration of Wenhao Wu ("Wu Decl."), ¶ 2. With a comprehensive supply chain from wafer fabrication to packaging, it is one of China's largest rectifier producers. *Id.* Its global sales network supports industries including automotive, aerospace, IoT, and renewable energy. *Id.*

Suzhou has spent substantial time and effort developing its Good-Ark brand in China and worldwide. Wu Decl., ¶ 3. Since 1999, Suzhou has registered multiple trademarks that contain the wording "Good-Ark". *Id.* These marks include:



Chinese Trademark Reg. No. 1263842 for the mark

Chinese Trademark Reg. No. 4473847 for the mark ; and

Chinese Trademark Reg. No. 4473845 for the mark "GOOD-ARK". *See* Wu Decl., Exhibit 1.

2

As early as 2001, Suzhou started shipping and selling its semiconductor products in the U.S. under its own brand name. Wu Decl., ¶ 4. Because of its superior product quality and customer service, Suzhou gained great reputation and brand recognition among its U.S. customers. *Id.* To expand on this early success, Suzhou decided to invest more in the U.S. to further develop the market, establish brand image, and increase brand awareness and product sales. *Id.*

**B. The Incorporation of Good-Ark USA as A Distributor of Suzhou's Products in the U.S.**

As such, on May 17, 2013, Suzhou and the Individual Defendants entered into an Investment Agreement (the "Investment Agreement"). Wu Decl., ¶ 5. According to the Investment Agreement, the parties agreed to incorporate Good-Ark USA in the U.S. to promote Suzhou's brand products in the U.S., establish brand image, increase Suzhou's brand awareness and product sales. *Id.*

On May 20, 2013, Good-Ark USA was incorporated. Pursuant to the Investment Agreement and since that time, Suzhou has been the majority shareholder, and the Individual Defendants have been the minority and the only other shareholders of Good-Ark USA. Wu Decl., ¶ 6.

Since its incorporation, Good-Ark USA has been a distributor for Suzhou's semiconductor products in the U.S. and has been operated by Junkins and Marullo, both of whom have served as directors and officers, and Singer, who has served as a non-director officer. Wu Decl., ¶ 7. As early as 2014, Suzhou had started using the "Good-Ark Semiconductor" and "Good-Ark" marks on its products for the U.S. market and Good-Ark USA had been a distributor for these products. *Id.*

Pursuant to the Investment Agreement, Good-Ark USA's board of directors (the "Board") was to consist of five (5) members: three (3) appointed by Suzhou and two (2) appointed by the Individual Defendants. Wu Decl., ¶ 8. As such, since Good-Ark USA's incorporation, the Board has comprised five members, with Suzhou's three designees Nianbo Wu, Youxi Teng, and Feimin Lu (the "Suzhou Directors"), and Junkins and Marullo serving as the two designees of the Individual Defendants. *Id.* There have been no changes to the composition of the Board or the identity of the directors to date. *Id.*

### C. The Individual Defendants' Secret Incorporation of GSC and Fraudulent Registration of the "Good-Ark Semiconductor" Mark

In May 2024, Suzhou discovered on the USPTO's website that a trademark application for the mark "Good-Ark Semiconductor" was filed by an entity named GSC USA Inc. Wu Decl., ¶ 9. At that time, Suzhou did not know who incorporated GSC. *Id.* As such, Suzhou immediately reached out to the Individual Defendants to seek more information on this matter. *Id.* The Individual Defendants acknowledged that they had formed GSC and filed the trademark application. Suzhou's leadership was taken aback, as the Individual Defendants had withheld all of this information from both the Board and Suzhou. Wu Decl., ¶ 10. Not only had they established a competing company, but they also attempted to register the "Good-Ark Semiconductor" trademark belonging to Suzhou. *Id.* The Individual Defendants clearly knew that Suzhou had always been the rightful owner of the "Good-Ark Semiconductor" mark. Wu Decl., ¶ 11. As early as 2014, Suzhou had started using the "Good-Ark" marks on its products for the U.S. market and Good-Ark USA had been a distributor for these products. Wu Decl., ¶ 7.

Suzhou never authorized GSC to use the "Good-Ark Semiconductor" mark, nor did it transfer the mark to GSC or grant GSC permission—express or implied—to register it. Wu

Decl., ¶ 12. By wrongfully registering the "Good-Ark Semiconductor" mark under GSC, a company with which Suzhou has no relationship whatsoever, the Individual Defendants literally stole Suzhou's intellectual property rights, potentially preventing Suzhou as well as Good-Ark USA from using the "Good-Ark Semiconductor" and "Good-Ark" marks in the U.S.

Confronted with the grave risk of forfeiting the "Good-Ark Semiconductor" trademark— and potentially the entire Good-Ark brand—to GSC in the U.S., Suzhou reached out to Junkins and Marullo and requested that GSC return the "Good-Ark Semiconductor" trademark to Suzhou. Wu Decl., ¶ 13. However, this effort was ultimately unavailing. *Id.*

On February 21, 2025, Suzhou filed a petition for cancellation, requesting the USPTO's Trademark Trial and Appeal Board to cancel GSC's registration of the "Good-Ark Semiconductor" mark. Wu Decl., ¶ 14.

On April 2, 2025, GSC filed an answer, in which it asserted that (1) GSC was formed in 2023 with the authority of Good-Ark USA, (2) on July 20, 2023, Good-Ark USA assigned the "Good-Ark Semiconductor" mark to GSC, and (3) on October 30, 2024, the second day after the "Good-Ark Semiconductor" mark was registered, GSC assigned the "Good-Ark Semiconductor" mark back to Good-Ark USA. Wu Decl., ¶ 15. However, the Individual Defendants concealed these transactions from the Board. As such, none of these transactions was ever disclosed to or approved by the Board. *Id.*

### D. GSC's Infringement of Suzhou's "Good-Ark Semiconductor" Mark and Diversion of Corporate Assets from Good-Ark USA

Since its establishment, Defendant GSC has begun advertising and selling semiconductor products in the U.S. under the infringing mark, directly competing with Suzhou and Good-Ark USA. Particularly, as admitted by GSC in its application for the "Good-Ark Semiconductor"

5

mark, US Application Ser. No. 98135271 (the '271 Application), at least as of June 11, 2024, GSC had sold products under the "Good-Ark Semiconductor" mark via the DigiKey website (www.digikey.com).  Wu Decl., ¶ 16.  Although GSC allegedly assigned the "Good-Ark Semiconductor" mark to Good-Ark USA, it is believed that GSC is still operating on the DigiKey website and has financially benefited from selling products under the mark.  Wu Decl., ¶ 17.  As such, it's believed that GSC's infringement of Suzhou's "Good-Ark Semiconductor" mark and diversion of corporate assets from Good-Ark USA is still ongoing.

### E.  The Individual Defendants' Obstruction of Proper Corporate Governance

Since Good-Ark USA's inception, the Board has never held a single meeting or adopted any resolution by written consent.  Wu Decl., ¶ 18.  The Individual Defendants have deliberately blocked all Board governance and oversight by refusing to participate in or convene meetings, and by arbitrarily rejecting Suzhou's proposed replacements for its own Board designees.

Defendant Junkins, Good-Ark USA's President and Secretary, is the only person authorized under the bylaws of Good-Ark USA (the "Bylaws") to call Board meetings.  Wu Decl., ¶ 19.

In communications with the Individual Defendants throughout 2024 and 2025, Suzhou Directors repeatedly sought to convene meetings to address urgent governance matters, including director resignations, replacements, amendments to bylaws, officer compensation, and corporate restructuring.  Wu Decl., ¶ 20.  These requests were either ignored or met with bad faith responses.  As such, no special board meeting was called.  *Id.*

For example, as recent as March 2025, all three Suzhou Directors requested Junkins to call a special Board meeting to address the Individual Defendants' material breach of their

fiduciary duties to Good-Ark USA. Wu Decl., ¶ 21. Given all three Suzhou Directors live in China, they provided signed consents to receive communications via electronic mail because international mails to China are not only slow but also insecure. *Id.* However, Suzhou Directors' proper request was met with Junkins' bad faith response – she responded with an intention to use mail, the slowest permissible method, and no meeting notice has been received to date. Wu Decl., ¶ 22.

As another example, on July 8, 2024, one of the Suzhou Directors, Mr. Nianbo Wu, requested that a Board meeting be called to resolve various urgent corporate matters, including his resignation and the election of his replacement. Wu Decl., ¶ 23. Defendant Junkins failed to commit to a meeting date and later unilaterally rejected Suzhou's proposed director nominees, effectively blocking Board action and dismissing other proposed meeting agenda items. *Id.*

Yet another example, in December 2024, Suzhou raised the issue of requiring Board approval for the engagement of an independent valuation firm to assess the valuation of Good-Ark USA. Wu Decl., ¶ 24. Suzhou specifically requested that the Board review the firm's credentials, proposed valuation methodology, and engagement terms before proceeding with any engagement. *Id.* However, Defendant Junkins dismissed this request, disregarded Suzhou's alternative firm proposal, and engaged a firm of her choosing without obtaining Board approval, thereby bypassing proper Board oversight. *Id.*

The Individual Defendants also systematically obstructed corporate recordkeeping oversight and violated the information rights of Suzhou and the Suzhou Directors. Despite Suzhou's status as a publicly traded company with disclosure obligations, the Individual Defendants selectively withheld and refused to provide critical and material operational and financial information, documentation and records. Wu Decl., ¶ 25. These included detailed

officer compensation records, customer and supplier lists and contracts, product inventory, and sales details. *Id.* In one instance, the Individual Defendants cited "privacy" concerns and mischaracterized the Suzhou Directors as "external parties" to justify denying access to internal corporate information. *Id.* Such conduct directly violates their duties of loyalty, good faith, and disclosure.

On April 3, 2025, Suzhou sent a formal demand letter directing the Individual Defendants to stop paying themselves compensation without Board approval and to restore governance procedures. Defendants rejected this demand through counsel and accused Plaintiff of improper motives — demonstrating further bad faith.

## III.   ARGUMENT

To obtain a preliminary injunction, a moving party must show: (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved." *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (internal citations omitted). The temporary restraining order standard is the same. *See, e.g., Echo Design Grp. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

### A.   Suzhou Satisfies the Requirements for Preliminary Relief

#### 1.   Suzhou, derivatively, will succeed on the merits on the breach of fiduciary duties claim

As officers and directors of Good-Ark USA, the Individual Defendants owed fiduciary duties to the Company and should not have established GSC as a competing entity. Their secret formation of GSC and unauthorized assignment of the "Good-Ark Semiconductor" trademark to Defendant GSC was conducted without any Board knowledge, review, or approval and constituted a blatant breach of their duty of loyalty owed to Good-Ark USA.

The Individual Defendants failed to disclose their personal and financial interests in GSC or any transactions between GSC and Good-Ark USA. By concealing these conflicts of interest and their dual roles in both companies, the Individual Defendants engaged in acts of self-dealing, prioritizing their own financial interests over their fiduciary obligations to Good-Ark USA.

Even worse, Defendant GSC then used the mark to unfairly compete against Good-Ark USA. This included the redirection of customers, products, and revenues to Defendant GSC— effectively diverting business opportunities and corporate assets away from Good-Ark USA for their personal benefit, in a blatant act of self-dealing and disloyalty. The Individual Defendants' participation in this scheme deprived Good-Ark USA of income, competitive advantage and key business relationships. Their actions amount to usurpation of corporate opportunities and were motivated by personal gain, in breach of their duties of loyalty and good faith.

> **2. Suzhou will succeed on the merits on the unfair competition, deceptive business practice, false advertising, and common law trademark infringement claims**

Suzhou is the senior user and rightful owner of the "Good-Ark" and "Good-Ark Semiconductor" marks in the U.S. and worldwide. Suzhou has used the "Good-Ark" and "Good-Ark Semiconductor" marks in connection with its semiconductor products in U.S. commerce since at least 2014. The marks have acquired substantial goodwill and recognition in the electronics and semiconductor industries.

The Individual Defendants had direct, firsthand knowledge of Suzhou's longstanding prior use and ownership of the "Good-Ark Semiconductor" mark and the whole Good-Ark brand. They had served as officers, directors and shareholders of Good-Ark USA, the company they formed with Suzhou as a distributor of Suzhou in the U.S. and were fully aware that Suzhou had used the mark extensively in U.S. commerce. Despite this knowledge, they filed a trademark application under GSC that resulted in U.S. Trademark Registration No. 7548282 for the mark "Good-Ark Semiconductor". The application falsely claimed a date of first use in commerce of June 24, 2013—a date that predates GSC's own formation in July 2023. The application also falsely represented that GSC was either the rightful owner of the mark or was a related company, licensee, or predecessor in interest to the true owner. Yet, GSC had no affiliation with Suzhou or Good-Ark USA at the time of the application. It was not a licensee, successor, or authorized user of the "Good-Ark Semiconductor" mark. GSC could not be entitled to have any ownership in the mark or have used the mark in commerce on or before the claimed date. These knowingly false statements constitute fraud on the U.S. Patent and Trademark Office.

Furthermore, Defendants engineered the improper transfer of the trademark from Good-Ark USA to GSC, followed by a second, fabricated assignment purporting to return the mark to Good-Ark USA—all designed to fabricate a chain of title and deceive the U.S. Patent and Trademark Office. Moreover, both assignments appear to have been recently executed but backdated in an attempt to shield themselves from liability. Should discovery confirm these facts, it would further underscore the Individual Defendants' untrustworthiness in managing Good-Ark USA's corporate affairs.

Defendants' acts not only constitute willful trademark infringement and unfair competition but also reflect a broader scheme by the Individual Defendants of corporate subversion to misappropriate intellectual property and divert Good-Ark USA's business opportunities for personal gain.

### 3. Suzhou will suffer irreparable harm absent preliminary relief

Irreparable harm is injury for which a monetary award cannot compensate. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990). Under the Trademark Modernization Act of 2020, a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits. *Gen. Petroleum GmbH v. Stanley Oil & Lubricants, Inc.*, 2024 U.S. Dist. LEXIS 163731 *53 (E.D. N.Y. 2024).

Here, the unauthorized use and registration of the "Good-Ark Semiconductor" mark by Defendant GSC, without Suzhou's consent, poses a significant threat to Suzhou's control over its brand. This unauthorized use is likely to cause confusion among consumers, dilute the goodwill associated with the "Good-Ark" brand, and damage Suzhou's and Good-Ark USA's reputation in the marketplace. Such harm to brand identity and consumer perception is difficult to quantify and cannot be adequately compensated by monetary damages alone.

Defendants' actions have already caused confusion among customers and diverted business and revenue from Suzhou and Good-Ark USA.

Defendants' incorporation and operation of GSC, even without the immediate use of the "Good-Ark Semiconductor" mark, create ongoing and irreparable harm to Good-Ark USA. The Individual Defendants, as fiduciaries of Good-Ark USA, are impermissibly benefiting from GSC's sales of competing products. These actions deprive Good-Ark USA of business

opportunities, divert corporate resources, and erode goodwill, regardless of whether the infringing mark is actively used. Immediate injunctive relief is necessary to prevent further breaches of fiduciary duties and diversion of Good-Ark USA's corporate interests.

Furthermore, the Individual Defendants have obstructed Board governance and oversight, preventing Suzhou from exercising its rights as the majority shareholder. This includes blocking Board meetings, withholding material corporate records, and engaging in unauthorized transactions. Such interference undermines the corporate governance structure and operational integrity of Good-Ark USA, causing harm that extends beyond financial loss and affects the Company's ability to function effectively.

### 4. Balancing of hardships and the Public Interest favors preliminary relief

The balance of hardships clearly favors Suzhou and Good-Ark USA. The harm faced by Suzhou and Good-Ark USA due to the Defendants' continued trademark infringement and governance obstruction is both significant and irreparable. Suzhou has established itself as a leading global manufacturer of discrete semiconductors, with a reputation for superior quality and innovation. The unauthorized use of the "Good-Ark" and "Good-Ark Semiconductor" marks by Defendant GSC, facilitated by the Individual Defendants, threatens to dilute this hard-earned goodwill and brand recognition, causing confusion among consumers and diverting business and revenue away from Suzhou and Good-Ark USA. Such harm is not easily quantifiable and cannot be adequately remedied by monetary damages alone.

The diversion of business opportunities and corporate assets to Defendant GSC represents a significant misappropriation of Suzhou's and Good-Ark USA's resources. This diversion not only impacts current revenue streams but also jeopardizes future growth and

market expansion, causing long-term damage to Suzhou's competitive position in the semiconductor industry.

Conversely, the Defendants will only be required to cease their unauthorized activities, which they have no legal right to engage in. The cessation of these activities merely restores the status quo and prevents further unlawful conduct. The Defendants' actions, including the fraudulent registration and use of the "Good-Ark Semiconductor" mark, constitute willful trademark infringement and unfair competition, which are not protected activities. Therefore, any hardship claimed by the Defendants is self-inflicted.

Furthermore, the public interest strongly supports granting the preliminary relief. The public has a vested interest in preventing consumer confusion and protecting the integrity of trademark rights. The Defendants' unauthorized use of the "Good-Ark" marks is likely to mislead consumers as to the origin, sponsorship, or approval of their goods, undermining consumer trust and the integrity of the marketplace. By granting the preliminary relief, the Court will ensure that consumers are not deceived and that fair competition is maintained, which is essential for a healthy and transparent market environment. Public interest is also served by ensuring corporate governance integrity, protecting shareholder rights, and maintaining trust in the business environment, which are essential for economic stability and fair market practices.

In conclusion, the balance of hardships and the public interest both favor the grant of preliminary relief to prevent further harm to Suzhou and Good-Ark USA and to uphold the principles of fair competition and consumer protection.

**B. A Temporary Receiver Is Necessary to Protect Good-Ark USA's Interests**

Defendants, while still controlling Good-Ark USA, have established and continue to operate a competing entity, GSC, for their own personal benefit and to the detriment of Good-

Ark USA.  In addition to their self-dealing, Defendants have actively obstructed proper corporate governance by, among other things, refusing to call a special board meeting.  Their ongoing misconduct and repeated breaches of fiduciary duty have severely undermined Good-Ark USA's governance structure and threaten irreparable harm to the company's assets, operations, and business opportunities.

Immediate appointment of a temporary receiver is necessary to preserve Good-Ark USA's corporate assets, prevent further breaches of fiduciary duty, and protect the company's business until this litigation can be resolved.  Without court intervention, it is impossible to restore proper governance and independent oversight.  Appointment of a receiver will provide neutral management, ensure compliance with corporate governance requirements, and prevent further injury to Good-Ark USA pending final resolution of this action.

A temporary restraining order or preliminary injunction alone may not be sufficient to protect Good-Ark USA.  Although such relief may prohibit certain actions by Defendants, it would still leave Good-Ark USA under the control of individuals who have already demonstrated a willingness to act contrary to the Company's best interests and to disregard corporate governance requirements.  The risk of continued internal obstruction, diversion of opportunities, and self-dealing cannot be adequately remedied by injunctive relief alone.  Only the appointment of a neutral third-party receiver can ensure that Good-Ark USA's operations are managed faithfully, assets are safeguarded, and fiduciary obligations are honored during the pendency of this litigation.

In addition to the Court's inherent equitable powers, the appointment of a receiver is warranted under New York Business Corporation Law § 1202(a)(3).  This action is brought by a shareholder to preserve the assets of Good-Ark USA, a corporation whose current officers have

rendered themselves unqualified to administer its affairs. Through their breaches of fiduciary duty, diversion of corporate opportunities, operation of a competing entity, and obstruction of corporate governance—including refusal to convene a special board meeting—the Individual Defendants have demonstrated that they cannot faithfully manage Good-Ark USA's assets and operations. Their divided loyalties and ongoing misconduct place the corporation's property and business at imminent risk of loss. Accordingly, a temporary receiver should be appointed pursuant to BCL § 1202(a)(3) to protect and preserve Good-Ark USA's assets pending the outcome of this litigation.

### C. Justification for Ex Parte Relief Under Rule 65(b)(1)

Suzhou respectfully submits that immediate and irreparable harm will result if notice is given to Defendants prior to the issuance of a Temporary Restraining Order. As required by Federal Rule of Civil Procedure 65(b)(1), good cause exists for proceeding ex parte, and Plaintiff's counsel hereby submits the necessary attorney certification—Declaration of Yong Chen ("Chen Decl.")—concurrently with this motion.

#### 1. Urgency and risk of irreparable harm

Defendants have demonstrated a clear pattern of misconduct, including the unauthorized use and fraudulent registration of Suzhou's "Good-Ark Semiconductor" trademark under the name of Defendant GSC—a shell entity formed without Suzhou's knowledge or approval or Good-Ark USA's board approval. This wrongful registration threatens Suzhou's and Good-Ark USA's brand integrity and risks confusing customers in the marketplace.

In addition, Defendants have systematically obstructed the governance processes of Good-Ark USA by refusing to convene board meetings, denying access to corporate information,

and engaging in self-dealing transactions that improperly divert assets and opportunities to GSC. The urgency is further heightened by the likelihood that, upon receiving notice of this action, Defendants may take immediate steps to destroy or conceal evidence, further transfer or encumber intellectual property, or otherwise frustrate the relief sought by Suzhou, derivatively or directly.

### 2. Likelihood of continued misconduct

Defendants' past conduct demonstrates a high likelihood of continued wrongdoing. They have already acted to misappropriate valuable intellectual property, mislead the U.S. Patent and Trademark Office, and deceive customers by trading on Suzhou's goodwill. Their refusal to cooperate in basic corporate governance, including blocking board oversight and withholding critical company information, evidences an intent to operate in secrecy and without accountability. Providing notice would likely prompt further concealment or dissipation of corporate assets, exacerbating the irreparable harm to Suzhou and Good-Ark USA.

### 3. Necessity of immediate court intervention

Immediate judicial intervention is required to prevent further exploitation of Suzhou's trademarks and to protect the governance and operations of Good-Ark USA from continued subversion. Without a temporary restraining order, Suzhou faces the real possibility of losing control over its brand in the U.S. market and suffering irreversible damage to its business reputation, customer relationships, and competitive standing.

Granting an ex parte TRO will preserve the status quo and prevent Defendants from engaging in further unauthorized conduct. It will also ensure that Suzhou's rights can be

meaningfully vindicated once Defendants are brought before the Court through the normal course of litigation.

For these reasons, ex parte relief is both necessary and appropriate under Rule 65(b)(1). Suzhou respectfully requests that the Court issue a Temporary Restraining Order without notice to enjoin Defendants from continuing to misuse the "Good-Ark" trademarks, obstructing governance at Good-Ark USA, or taking any steps that would exacerbate the harm to Plaintiff or frustrate the jurisdiction of this Court.

Dated: May 29, 2025

Respectfully submitted,

 /s/ Yong Chen

Yong Chen
LIU, CHEN & HOFFMAN LLP
14 Penn Plaza, Ste 2020
New York, NY 10122
(212) 547-6694 (Tel)
(212) 547-6692 (Fax)
ychen@ambizlaw.com
Attorney for Plaintiff

**Certificate of Compliance with Word-Count Limitations**

I, Yong Chen, counsel for Plaintiff for the above-captioned case, certifies that the foregoing Memorandum of Law in support of Plaintiff's *ex parte* application for a temporary restraining order contains 4,340 words (excluding words in the case captioning, table of contents, table of authority, and signature block), such word count being obtained by the word-processing

program used to prepare the document, and as such, the document complies with the Local Rule 7.1(c).


Respectfully submitted,

Date: May 29, 2025

/s/ Yong Chen